## Anthony Range, Appellee, v. Helmbacher Forge & Rolling Mill Company, Appellant.

1. MASTER AND SERVANT—*duty of former to warn.* The master cannot be held liable for failure to warn a servant against a danger with which the servant is acquainted or that is open and obvious; also, that the obligation of a master to warn an inexperienced servant does not arise unless the master has reason to believe he is inexperienced and is not aware of the danger.

2. MASTER AND SERVANT—*recklessness of servant.* A servant cannot recklessly or negligently go into a place of danger and in case he receives injury, recover damages, because it appears that he was at the exact time the injury occurred in the exercise of ordinary care for his safety.

3. MASTER AND SERVANT—*liability to inexperienced servant. Held,* under the evidence, that it was for the jury to determine whether the master was liable for an injury which resulted to an inexperienced servant to whom the accident happened by reason of his clothing being caught in a set-screw in consequence of which he was carried around a shaft.

4. INSTRUCTIONS—*when refusal of correct will not reverse.* The refusal of a correct instruction will not reverse if its contents are substantially contained in other instructions given.

Action in case for personal injuries. Appeal from the Circuit Court of Madison county; the Hon. W. E. HADLEY, Judge, presiding.

Range v. Helmbacher Forge & Rolling Mill Co., 161 Ill. App. 211.

Heard in this court at the October term, 1910. Affirmed. Opinion filed April 15, 1911.

WISE, KEEFE & WHEELER, for appellant.

J. M. BANDY and D. J. SULLIVAN, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a suit brought by appellee against appellant for personal injuries, received under the following circumstances, as shown by the evidence.

Appellant operates a plant for the manufacture of iron and steel products in Madison county. On December 10, 1908, appellee, who was 26 years of age, raised on a farm and without experience elsewhere, was employed by the assistant foreman to work for appellant. On the first day he piled iron and the next day was turned over to a millwright as his helper. There were three sets of shafting at the plant, one in the machine shed and two in the scrap iron shed. In assisting the millwright, appellee oiled the shaft in the main shed and one of those in the scrap iron shed. These two were about six feet from the ground and there were boards or platforms on a level with them on which he stood while he did the oiling. The other shaft in the scrap iron shed ran north and south, was about ten feet long and rested on brackets at each end. On the shaft was a pulley that received the power and another that communicated it to the scrap iron shears operating below the shaft. Over the shears was a roof or platform on the west side of which was an elevated track for cars called the high line. At the north end of the platform a piece of timber, 2 by 8 inches, set edgewise, ran from the high line out over the shaft. Over the brackets above the ends of the shaft was a boxing and in the top of the boxing, an oil cup into which the oil was poured for lubricating the shaft. At each end of the shaft next to the

bearing was a two inch collar held in place by a set screw, running through the same to the shaft, which was ¾ of an inch square and projected above the collar an inch and a half. When the shaft was in motion the screw head revolved about 290 times a minute. Late in the day on December 14, 1908, appellee's foreman ordered him to oil the shaft, just described. It was then in motion and appellee dressed in overalls and jumper, took an oil can, went up the ladder at the south end of the platform and while standing thereon, poured oil in the oil cup at that end of the shaft. He then stepped on the platform and passed to the north end of the shaft on the east side thereof. While standing on the platform and oiling, or preparing to oil, the north end of the shaft, his clothing was caught by the projecting set screw, and he was carried around the shaft a number of times, until all of his clothes were torn from him. He was thrown on a pile of hot scrap iron, by which he was severely burned, before he was rescued. One leg was broken and he was bruised over his entire body. At the time of the trial, over a year later, he had not entirely recovered.

At the time of the injury appellee, who had only been at work a few days, did not see the set screw, did not know what it was, was not informed concerning it or the danger attending it, nor in any way instructed as to how to oil the shaft.

The theory of appellee is that the set screw was invisible when in motion and that this fact was or should have been known to appellant; that it was unknown to appellee and could not have been discovered by him, in the exercise of ordinary care, and that appellant carelessly ordered him to oil the shaft without informing him of the presence of the screw.

Appellant insists it is shown that the screw could have been seen and also that appellee did not adopt the proper and safe way to perform the duty ordered;

214    APPELLATE COURTS OF ILLINOIS.

Range v. Helmbacher Forge & Rolling Mill Co., 161 Ill. App. 211.

that he could have safely oiled it from the high line or from the west side of the platform or walked out on the edge of the 2 by 8 timber that extended over the shaft.

While it is true it was shown the oil cup could have been filled in the way suggested by appellant, it was not shown that any one way was the only proper one, nor that it could not have been safely oiled from the east side of the platform, by one who knew of the existence of the set screw and understood the danger. It is apparent that each way had its disadvantages and dangers, for an inexperienced hand.

It was clearly within the province of the jury to say whether appellee was guilty of a lack of care for his own safety in adopting the way he did, to oil the shaft, in place of one of those suggested by appellant. It was also for the jury to determine whether appellee's clothing was caught on the set screw or at another point on the revolving shaft, as suggested by appellant, and as there is ample evidence tending to show it was caught on the screw, as they must have found, such finding should not be disturbed.

Appellant complains that the count of the declaration on which the judgment is based, sets out it was the duty of appellant to inform appellee of the presence of the set screw in question, but failed to state that defendant did not so inform him, and therefore the declaration was defective. There was no special demurrer filed, covering this question, nor was there a motion entered in arrest of judgment. The proof clearly showed such failure on the part of appellant, and we are of opinion the defect, if indeed there was one when the whole declaration is taken together, was cured by the verdict and cannot be effectively raised on appeal.

Appellant rightfully argues that a master cannot be held liable for failure to warn a servant against a danger with which the servant is acquainted, or that

Range v. Helmbacher Forge & Rolling Mill Co., 161 Ill. App. 211.

is open and obvious; also that the duty to warn an inexperienced servant does not arise unless the master has reason to believe he is inexperienced and is not aware of the danger. These rules of law cannot, however, avail appellant in this case for the reason that the conditions under which they could be applicable were not established by the proofs.

Appellant criticises the first instruction given for appellee, because, after stating certain conditions necessary for appellee to prove in order to establish his case, it authorized a recovery, if the jury further believed from a preponderance of the evidence that "at the time plaintiff was injured he was in the performance of his duties, and was in the exercise of ordinary care for his own safety."

It is true that a person cannot recklessly or negligently go into a place of danger, and in case he receives injury, recover damages because it appears he was afterward, at the exact time the injury occurred, in the exercise of ordinary care for his safety; but that state of facts does not exist in this case. Appellee was ordered by appellant to go where he did, was not instructed how to perform his duties there, and was ignorant of the danger. We think a fair interpretation of "the time plaintiff was injured" under the circumstances in this case includes all the time he was engaged "in the performance of his duties" in oiling the shafting in question.

Appellant also complains that its sixth instruction was refused by the trial court. There was no error in this regard for the reason, as examination of the refused instruction shows, that the principle laid down was covered by two other instructions given for appellant.

No substantial reason appears from the record why the judgment should be reversed and the same is therefore affirmed.

*Affirmed.*